Argued and submitted May 14, reversed and remanded October 28, 2009

# STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

# RAY VALERO,
*Defendant-Respondent.*

Washington County Circuit Court
D071794T; A138009

219 P3d 607

Jamie K. Contreras, Assistant Attorney General, argued the cause for appellant. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

John J. Tyner argued the cause for respondent. With him on the brief was Tyner & Associates.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

SCHUMAN, J.

**SCHUMAN, J.**

In this driving under the influence of intoxicants case, the trial court suppressed the results of defendant's breath test on the ground that the officer who administered the test did not possess a valid permit or personal identification number (PIN) indicating that he had been trained to operate the breath test machine. The relevant facts are undisputed. Whether those facts justify the trial court's decision presents a question of law that we review for legal error. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). We conclude that the court erred in suppressing the test results. Accordingly, we reverse and remand.

Defendant was arrested in connection with a domestic disturbance. During the investigation related to that arrest, Officer Richards developed probable cause to believe that defendant had been driving under the influence of alcohol. Richards took him to the police station and, with defendant's consent, conducted field sobriety tests and a breath test using an instrument called the Intoxilyzer 8000. According to ORS 813.160, a police officer must have a valid permit in order to administer a breath test.[1] Further, the Department of State Police has promulgated a rule specifying that "[o]nly operators who possess both a valid permit and PIN will be authorized to conduct a[n] [Intoxilyzer 8000] test sequence." OAR 257-030-0130(4)(a). Richards had been trained and certified to use the Intoxilyzer 8000 a few days before he arrested defendant, and, as a result, he had qualified for a permit and had chosen a PIN. However, that information had not yet been entered into the statewide data system, and Richards had not yet received the actual documentation in the mail. Thus, the Intoxilyzer 8000 did not recognize Richards's PIN, and he was unable to start the machine to conduct the test. In accordance with the training he had

---

[1] ORS 813.160 provides, in part:

"(1)  A chemical analysis is valid under ORS 813.300 if:

"* * * * *

"(b)  It is an analysis of a person's breath and is performed by an individual possessing a valid permit to perform chemical analyses issued by the Department of State Police and is performed according to methods approved by the Department of State Police."

received, he borrowed a fellow officer's PIN and used it to administer the test. Consequently, Richards's name did not appear on the Intoxilyzer result card.

During the hearing on defendant's motion to suppress, the court ruled (and defendant conceded) that the officer had had probable cause, and consent, to conduct the Intoxilyzer test. Regarding the result of the test itself, defendant argued that it was invalid and therefore subject to suppression because Richards did not have a valid permit and PIN, contrary to the requirements of ORS 813.160 and OAR 257-030-0130(4)(a). The state responded that, when Richards administered the test, he "possessed" a valid permit and PIN, despite the fact that the information had not been entered into the state's data system. Further, the state argued, the permit and PIN requirements were merely administrative and did not relate to the reliability of the test and, for that reason, failure to conform to them did not justify suppression of the test result. The court ruled against the state based entirely on its conclusion that Richards did not possess a valid permit and PIN:

> "What the law says is only operators who possess both a valid permit and PIN will be authorized to conduct a test. This particular officer did not possess both a valid permit and PIN. That is plain language; it can't be any plainer than that. And the question is whether or not the court's going to follow the plain language or whether I'm going to read something else into it that says, 'We don't really mean what we're saying in this law.' Because it's plain to me what the language says. If this court or the Court of Appeals or somebody else chooses to say, 'Well, we don't really mean that,' then they can make that decision. But the law to me seems very clear. It says, 'Only operators who possess both a valid permit and PIN will be authorized to conduct the test.' "

The court issued an order suppressing the result of the breath test, and this appeal ensued. *See* ORS 138.060(1)(c) (authorizing state's appeal from an order suppressing evidence).

■ We agree with the state that the premise on which the trial court relied—that Richards did not "possess both a

valid permit and PIN"—is not correct. The undisputed evidence establishes that Richards successfully completed his training on the Intoxilyzer 8000 on April 17, five days before he used that machine to test defendant's breath. Richards testified that, at that point, the Department of State Police issued him a permit. That testimony is in accord with OAR 257-030-0090(2): "Upon completion of the course of instruction, a written examination will be given and a passing grade of 80 percent or above will be required. Each officer or technician obtaining a passing grade will be issued a permit[.]" Indeed, Richards brought his permit to the suppression hearing, and it indicated that the date of issuance was April 17. Further, Richards testified that he had selected a PIN. Again, the relevant rule supports that assertion: "Upon issuance of a permit to operate * * * the operator shall select a Personal Identification Number[.]" OAR 257-030-0160(3). It is true that, when he tested defendant, Richards had received neither the document attesting to his successful completion of the training nor a tangible record of his PIN. Those facts, however, would mean that he did not "possess" the necessary certification or identification only if we were to read "possess" to mean "have in his physical possession." Defendant suggests no reason why we should adopt such a narrow definition of the term, nor can we think of any. One can, for example, "possess" a license to practice law without carrying any physical document indicating that status. One "possesses" real or personal property without carrying it on one's person. Indeed, the first nonobsolete definition of "possess" in *Webster's Third New Int'l Dictionary* 1770 (unabridged ed 2002) is: "to have and hold as property : have a just right to : be master of." If we were to adopt defendant's definition, police officers would have to carry their Intoxilyzer permits and PINs with them whenever they administered a breath test. Nothing suggests that the Department of State Police could have had that result in mind when it promulgated OAR 257-030-0130(4)(a).

■     As noted above, the trial court granted defendant's motion to suppress based entirely on the conclusion that Richards did not possess a valid permit or PIN. On appeal, defendant appears to suggest another basis for suppression, which we address because it could arise on remand: that, by

entering another officer's PIN, Richards failed to comply with the testing procedure established by OAR 257-030-0130(4): "The operator *shall* enter into the instrument a permit and Personal Identification Number (PIN) * * * for the purpose of: (1) identifying the operator conducting the test, and (2) establishing that the operator possesses a valid operator permit and PIN combination." (Emphasis added.) We have held, however, that an error in administering a breath test justifies suppression only if the error is likely to affect the accuracy of the result. *State v. Galli*, 125 Or App 218, 220, 865 P2d 361 (1993); *State v. Hemkin*, 102 Or App 79, 82, 792 P2d 483 (1990). We recognize that, in some circumstances, an officer's failure to enter his own permit and PIN could detract from the reliability of the test—for instance, if the officer did not actually have a permit or PIN because he or she had not been trained on the machinery. This case does not present such a situation. The fact that Richards, a certified operator of the Intoxilyzer 8000, used another officer's PIN, did not affect in any way the accuracy of the test result.

Reversed and remanded.